# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Ronald David Johnson, | Case No. 22-cv-1039 (ECT/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| B. Eischen, *FPC-Duluth Warden*, | |
| Respondent. | |

---

This matter is before the undersigned United States Magistrate Judge on Petitioner Ronald David Johnson's ("Petitioner" or "Johnson") Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") (Dkt. 1).  This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court recommends that the Petition be denied.

## I.   BACKGROUND

On November 20, 2017, Johnson was sentenced to 126 months' imprisonment with 3 years of supervised release to follow.  (Dkt. 10-1, Gov't. Ex. A at 2-3 (Johnson's Public Inmate Data).)[1]  Johnson's statutory release date via good conduct time ("GCT") is October 14, 2026.  (*Id*. at 1-3.)

---

[1]      Unless stated otherwise, references to page citations refer to the CM/ECF pagination.

On April 25, 2022, Johnson filed a Petition under 28 U.S.C. § 2241 in this Court against Respondent B. Eischen ("Respondent" or "Warden Eischen")—the Warden of the Federal Prison Camp in Duluth, Minnesota ("FPC-Duluth"), where Johnson was incarcerated at the time the Petition was filed.  (Dkt. 1 at 1.)  On June 27, 2022, Johnson filed a notice of change of address, stating he had been "released from FPC-Duluth" and providing a residential address as his current address.  (*See* Dkt. 6 at 1.)

On June 30, 2022, the Court directed Respondent to file an answer to the Petition and provided Johnson the opportunity to file a reply within 21 days of when the answer is filed.  (Dkt. 7 at 1-2.)  On July 21, 2022, Warden Eischen filed a Response to the Petition, along with the declarations of Shannon Boldt, who is employed by the Federal Bureau of Prisons ("BOP") as a Paralegal Specialist for the Consolidated Legal Center, and Kyja Winger, the Unit Manager at FPC-Duluth.  (Dkt. 8; Dkt. 9 (Boldt Decl.) ¶ 1; Dkt. 10 (Winger Decl.) ¶ 1.)  On August 17, 2022, Johnson filed a Reply to Warden Eischen's Response.  (Dkt. 12.)  Accordingly, this matter is ready for review.

**A.    Johnson's Petition**

In the Petition, Johnson states that the time credits he has earned under the First Step Act ("FSA") "in the years 2019, 2020, 2021, & 2022 are not being credited.  The [FSA] clearly calls out, and the BOP/[Department of Justice] have admitted, the BOP has until January 15, 2022 to apply credits earned (all)."  (Dkt. 1 at 2.)  Johnson claims that on January 28, 2022, he raised the issue of his FSA time credits not being applied to his sentence with the BOP and a "Case Manager did not know where the 'credits were.'" (*Id.*)  Johnson contends that he re-raised the issue on February 17, 2022 and the "Unit

2

Manager did not know 'where the credits were' or why not applied," and raised it again on March 11, 2022, resulting in the "Associate Warden stat[ing] 'when applied you[r] case manager will let you kno[w]." (*Id.* at 3.)

Johnson alleges four grounds in the Petition. In Ground One, Johnson states that the FSA "gave" the BOP "until January 15, 2022 to implement and apply earned First Step Act credits. These earned credits were to be applied to each inmates [sic] percentage of sentence completed and as of April 21, 2022, still have not been applied." (*Id.* at 6-7.) Ground Two asserts that Johnson has "earned credits for productive activities, work & classes all through 2019, 2020, 2021, & 2022" and as supporting facts, states that he has "been incarcerated since 2017 and all classes have been documented on [his] progress report and work has been documented on monthly time sheets." (*Id.* at 7.) In Ground Three, Johnson contends that he is FSA "'eligible' and this is/has been confirmed by the BOP." (*Id.*) Johnson alleges in Ground Four that he has "gone to all 'chain of command' staff. Counselors, Case Managers, Unit Manager, Warden's office and Associate Warden where they have all told [him] 'I don't know where the credits are . . . region is late, stalling and we are waiting on them.[']" (*Id.* at 8.)

As his requested relief, Johnson states:

The Bureau of Prisons had until January 15, 2022 to calculate and apply all First Step Act credits. This date is defined in the First Step Act law, signed 12/21/18. The Bureau of Prisons had three plus years to get ready and complete what they were ordered to do however, they have not done so. They currently are violating federal law. I am seeking the full calculation and application of all credits earned to date. By applying these credits my percentage of sentence complete [sic] will change so I am also asking for that new percentage of sentence satisfied.

(*Id.*)

**B.    Respondent's Arguments**

In the Response, Respondent argues that Johnson's Petition should be dismissed because: (1) Johnson failed to exhaust his administrate remedies; (2) his request to have his FSA time credits calculated is moot; and (3) his request to have his FSA time credits immediately applied to his sentence is premature.  (Dkt. 8 at 1, 13-19.)  Respondent also argues that an evidentiary hearing is unnecessary because this matter can be resolved on the record before the Court.  (*Id.* at 19-20.)

**1.    Exhaustion of Administrative Remedies**

According to Respondent, Johnson did not exhaust his administrative remedies as he failed to file any formal administrative remedy requests regarding his FSA time credits.  (*Id.* at 14-15.)  Respondent also argues that exhaustion is not futile given that Johnson's projected release date is not until October 14, 2026.  (*Id.* at 15.)

**2.    Johnson's First Step Act Time Credits**

Respondent states in the Response that Johnson is eligible to earn FSA time credits; that Johnson has been scored a "Minimum on the [Prisoner Assessment Tool Targeting Estimated Risks and Needs ("PATTERN")] Risk Tool since his first assessment in December 2019"; and that Johnson is currently on the waiting list for participating in or has completed the following evidence-based recidivism reduction

("EBRR")[2] programs and productive activities ("PA")[3]: "Money Smart and Non-Residential Drug Abuse Treatment."  (*Id.* at 10-11 (citing Dkt. 10 (Winger Decl.) ¶¶ 4, 5, 9; Dkts. 10-1 to 10-5, Gov't. Exs. B, D, E).)  According to Respondent, the BOP "is in the process of incorporating [FSA time credits] tracking capabilities into its SENTRY[4] inmate management system and updating sentencing computations," with priority given to inmates with the closest release dates.  (*Id.* at 11.)  Respondent states that Johnson's "sentence computation has not yet been updated" but regardless of whether FSA time credits are incorporated into SENTRY and reflected on a sentence computation or not, FSA time credits "do not change 'the percent of statutory time served' on an inmate's sentence computation."  (*Id.*)

According to Respondent, the "BOP's Central Office has determined that Johnson has earned approximately 630 days" of FSA time credits as of June 25, 2022.  (*Id.* (citing Dkt. 10 (Winger Decl.) ¶ 11).)

---

[2]    "An EBRR Program is a group or individual activity that has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; and is designed to help prisoners succeed in their communities upon release from prison." 28 C.F.R. § 523.41(a).

[3]    "A PA is a group or individual activity that allows an inmate to remain productive and thereby maintain or work toward achieving a minimum or low risk of recidivating." 28 C.F.R. § 523.41(b).

[4]    SENTRY is the BOP's "primary mission support database. The system collects, maintains, and tracks critical inmate information, including inmate location, medical history, behavior history, and release data." *SELECT APPLICATION CONTROLS REVIEW OF THE FEDERAL BUREAU OF PRISONS'S SENTRY DATABASE SYSTEM*, U.S. Department of Justice Office of the Inspector General Audit Division, https://oig.justice.gov/reports/BOP/a0325/final.pdf (last visited February 22, 2023).

### a.    Mootness

Respondent argues that Johnson's request for the BOP to calculate the FSA time credits he has earned is moot "because the BOP's Central Office has calculated that Johnson has earned 630 days of [FSA time credits] as of June 25, 2022." (*Id.* at 16 (citing Dkt. 10 (Winger Decl.) ¶ 11).)  Respondent asserts that 630 days of FSA time credits "represents the maximum amount of [FSA time credits] an inmate who has maintained a Minimum PATTERN score can earn as of June 25, 2022." (*Id.*) Respondent contends that none of the mootness exceptions apply.  (*Id.* at 17.)  According to Respondent, when Johnson's FSA time credits "equal the remainder of time on his sentence, the BOP will determine, since he has already been transferred to home confinement, if he meets the criteria to receive an early release." (*Id.* at 17 (citing 18 U.S.C. § 3632(d)(4)(C); 18 U.S.C. § 3624(g).)

### b.    Immediate Application

Respondent argues that Johnson's claim for immediate application of his FSA time credits should be dismissed as premature because his claim is hypothetical and is therefore unripe.  (*Id.* at 18.)  Respondent contends that the FSA does not allow time credits to be applied until the number of time credits an inmate has earned is equal to the remainder of the inmate's term of imprisonment.  (*Id.*)  Respondent asserts that Johnson's projected release date is October 14, 2026 via GCT and that while FSA time credits could afford him "additional time in pre-release custody and potentially advance his release date by a maximum of 365 days, the [FSA time credits] Johnson has earned to date cannot be applied to his sentence at this time because they do not equal the remainder of

his term of imprisonment." (*Id.*) Respondent contends that while Johnson is currently in home confinement, he could possibly be returned to institutional custody, that his PATTERN score could increase before his FSA time credits equal the remainder of his sentence, which would impact his ability to apply time credits to his sentence, and that he could be subject to disciplinary actions prior to his time credits being applied, resulting in a loss of time credits. (*Id.* at 18-19.) Respondent contends that an inmate's FSA time credits are not part of the time served component of an inmate's sentence. (*Id.* at 19.)

**C.   Johnson's Reply**

In the Reply, Johnson contends that he has properly exhausted all administrative remedies, that the FSA shortens inmates' sentences by mandating that all calculated time credits be applied immediately, and that the BOP "has determined, and now admits, Mr. Johnson is owed at least '630 days of credits as of June 25, 2022,'" yet, the BOP has failed to apply those credits as required by the FSA. (Dkt. 12 at 1-2.) Johnson asks the Court to issue an order "directing the BOP to applied [sic] all earned and recognized credits to [his] sentence immediately." (*Id.* at 3.)

## II.   ANALYSIS

**A.   Exhaustion**

Johnson contends that his "multiple completed filings with the Warden of FPC-Duluth, plus his additional requests to Bureau of Prisons regional offices (BP 10's & 11's), should satisfy any administrative remedy." (*Id.* at 2.) The only exhibit Johnson filed to show that he exhausted all administrative remedies was filed with the Petition, which is inclusive of an email sent by Johnson to the Associate Warden on March 10,

2022, asking for the total amount of FSA time credits he had earned as of the email date. (*See* Dkt. 1-1 at 2.)  The Associate Warden responded that Johnson's case manager would inform Johnson at the time his FSA time credits "have been applied" and asked Johnson to follow the "Chain of Command" for "future questions of this nature[.]"  (*Id.*)

Based on the current record, it does not appear Johnson has exhausted his administrative remedies as it relates to his FSA time credits challenge.  (*See* Dkt. 9 ¶ 15 (Boldt Decl. stating "Johnson has not filed any remedies on his First Step Act time credits"); *see also* Dkt. 9-1, Gov't. Ex. A and Dkt. 9-2, Gov't Ex. B (BOP Data showing a history of Johnson's administrative remedies request during his time of incarceration, including for home confinement and as to his GCT credits).)

Generally, all federal prisoners must exhaust all available administrative remedies prior to seeking federal habeas corpus relief under 28 U.S.C. § 2241.  *See United States v. Wilson*, 503 U.S. 329, 335 (1992); *see also Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009).  However, because the concept of exhaustion for § 2241 petitions is judicially created and not mandated by statute, "sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (citations omitted); *see also Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) (holding that failure to exhaust does not affect a court's ability to decide a case where "the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional").

In determining whether to exercise its discretion, the Court "balance[s] the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion."  *McCarthy*, 503 U.S. at 146.

Courts have concluded that the exhaustion requirement may be excused due to time constraints or where proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose.  *See Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004) (exhaustion requirement waived based on government's concession that "continued use of the [administrative] grievance procedure to contest the validity of the BOP's new policy would be futile").

In the case of Johnson's FSA claims, the balancing of interests favors having the issues raised by Johnson promptly decided over the institutional interests protected by the exhaustion requirement, especially in light of the fact that the BOP has established its position as it relates to the effective date of the FSA.  *See Schlegel v. Rios*, Case No. 19-cv-338 (SRN/ECW), 2019 WL 3417053, at *2 (D. Minn. June 18, 2019) (holding the balancing of interests favored deciding the issues raised by the Petitioner given that the "BOP has established its position as it relates to the effective date of the First Step Act."). The Court therefore waives the exhaustion requirement and reaches the merits of Johnson's claims.

**B.    Johnson's First Step Act Time Credits**

Johnson asserts in Grounds One through Four of the Petition that his FSA time credits should be calculated and immediately applied to his sentence.  (*See* Dkt. 1 at 6-8.)

**1.    FSA Requirements**

The FSA was signed into law on December 21, 2018, and provides, among other things that "[n]ot later than 210 days after the date of enactment of this subchapter, the Attorney General . . . shall develop and release publicly on the Department of Justice

website a risk and needs assessment system" to be used to "determine the recidivism risk of each prisoner . . . and classify each prisoner as having minimum, low, medium, or high risk for recidivism." 18 U.S.C. § 3632(a)(1).  On July 19, 2019, the Attorney General publicly released a risk and needs assessment system, stating the development of the PATTERN, which was updated in January 2020.  *See The First Step Act of 2018: Risk and Needs Assessment System*, U.S. Dep't of Justice Office of the Attorney Gen. (July 19, 2019), www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf; *see also The First Step Act of 2018: Risk and Needs Assessment System - UPDATE*, U.S. Dep't of Justice Office of the Attorney Gen. (Jan. 2020), www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf.

According to the FSA, the BOP then had 180 days from July 19, 2019 to "implement and complete" the PATTERN assessment for each prisoner.  *See* 18 U.S.C. § 3621 (h)(1)(A); *see also Manning v. Kallis*, No. 21-cv-160 (JRT/KMM), 2021 WL 4526653, at *1 (D. Minn. Sept. 9, 2021) ("The First Step Act next establishes January 15, 2020 as the deadline for the BOP to implement and complete the initial PATTERN assessment for each prisoner") (citing 18 U.S.C. § 3621(h)(1)).  The BOP was to provide opportunities for prisoners to participate in EBRR programs and PAs and "provide incentives and rewards for prisoners" who complete those programs and activities, including "increased phone privileges, additional visitation time, transfer to prisons closer to prisoners' residence upon release, and, for prisoners who complete EB[R]R programs,

'time credits.'" *Manning*, 2021 WL 4526653, at *1 (citing 18 U.S.C. §§ 3632(d)(1), (d)(2), (d)(4)).

The BOP then had two years from the January 15, 2020 date, or until January 15, 2022, to "phase in" the EBRR programs and PAs for each prisoner. 18 U.S.C. § 3621(h)(2)(A); *see also Depoister v. Birkholz*, No. 21-cv-684 (ECT/BRT), 2021 WL 3492295, at *2 (D. Minn. Aug. 9, 2021). During the 2-year phase-in period, the BOP's "priority for such programs and activities shall be accorded based on a prisoner's proximity to release date" and the BOP may begin to expand any EBRR programs and PAs that exist at a prison and "may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D." 18 U.S.C. §§ 3621(h)(3), (h)(4).

An eligible inmate "may" earn FSA time credits "for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020." 28 C.F.R. § 523.42(b)(2). According to the BOP:

> [F]or inmate participation in programming during this period of time, the Bureau will exercise its discretion to award FSA Time Credits to inmates otherwise deemed eligible under the First Step Act by applying the same criteria as that applied to inmate participation in authorized EBRR programs or PAs recommended based on a risk and needs assessment after January 2020 to determine the inmate's retroactive Time Credit balance. Eligible inmates will be afforded a presumption of participation for the period between December 21, 2018, and January 14, 2020 and be awarded Time Credits accordingly.

*See FSA Time Credits A Rule by the Prisons Bureau on 01/19/2022*, Federal Register, The Daily Journal of the United States Government,

https://www.federalregister.gov/documents/2022/01/19/2022-00918/fsa-time-credits (last visited February 22, 2023).

Eligible prisoners that "successfully complete[] evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation" in such programs or activities, and a prisoner that is determined by the BOP to be "at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation . . ."  18 U.S.C. § 3632 (d)(4)(A)(i)(ii).  "'Successful participation' requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA."  28 C.F.R. § 523.41(c)(2).  An eligible inmate is generally not considered to be "successfully participating" in EBRR programs or PAs in situations including, but not limited to the following:

> (i) Placement in a Special Housing Unit;
>
> (ii) Designation status outside the institution (e.g., for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);
>
> (iii) Temporary transfer to the custody of another Federal or non–Federal government agency (e.g., on state or Federal writ, transfer to state custody for service of sentence, etc.);
>
> (iv) Placement in mental health/psychiatric holds; or

     (v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment)."

28 C.F.R. § 523.41(c)(4)(i)-(v).

However, "[t]emporary operational or programmatic interruptions authorized by the Bureau that would prevent an inmate from participation in EBRR programs or PAs will not ordinarily affect an eligible inmate's 'successful participation' for the purposes of FSA Time Credit eligibility." 28 C.F.R. § 523.41(c)(3). FSA time credits for inmates that successfully participate in EBRR programs or PAs "shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). Prelease custody includes being placed in either home confinement or a residential reentry center. 18 U.S.C. § 3624(g)(2)(A)(B). An inmate may lose FSA Credits "for violation of the requirements or rules of an EBRR Program or PA" and the inmate may appeal that loss "through the Bureau's Administrative Remedy Program." 28 C.F.R. § 523.43(a)(b).

An inmate that is eligible to apply his FSA Credits is someone who:

     (A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

     (B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

     (C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

     (D) (i) in the case of a prisoner being placed in prerelease custody, the prisoner—

(I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

(II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that--

(aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

(bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

(cc) the prisoner is unlikely to recidivate; or

(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624(g)(1).

## 2.      Whether Johnson's FSA Claim is Moot

The Court first considers Respondent's mootness argument.

"Article III of the United States Constitution only allows federal courts to adjudicate actual, ongoing cases or controversies.  The case-or-controversy requirement exists at all stages of federal judicial proceedings."  *Parish v. Marques*, Case No. 19-cv-1038 (NEB/TNL), 2019 WL 5654047, at *2 (D. Minn. Sept. 13, 2019) (quoting *Potter v. Norwest Mortg., Inc.*, 329 F.3d 608, 611 (8th Cir. 2003)) (citing U.S. Const. art. III, § 2)).  "It is of no consequence that a claim was live at an earlier stage in the proceedings; a claim must be live when the court decides the issue.  The 'case or controversy'

requirement is not met if 'the question sought to be adjudicated has been mooted by subsequent developments.'" *Id.* (citations and quotations omitted).

"When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot." *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (quoting *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000)). When a case becomes moot, a federal court cannot "address the merits because any opinion [the court] would issue would be merely advisory." *In re Search Warrants Issued in Connection with Investigation of S. Cent. Career Ctr., W. Plains, Mo.* ("*In re Search Warrants*"), 487 F.3d 1190, 1192 (8th Cir. 2007) (citing *Haden*, 212 F.3d at 469).

In his Reply, Johnson does not dispute the amount of FSA time credits that has been calculated by the BOP but instead, argues that all of his fully earned time credits should be applied immediately.  (*See* Dkt. 12 at 1-3.)  Accordingly, because Johnson does not dispute how the BOP is calculating his FSA time credits or the amount of time credits the BOP has assessed to him, Grounds One through Four are moot to the extent they allege that the BOP is not calculating his FSA time credits.

However, a court should not dismiss a habeas claim as moot if any of the following exceptions apply:

> (1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit.

15

*Ahmed v. Sessions*, Case No. 16-CV-02124 (DSD/HB), 2017 WL 3267738, at *2 (D.

Minn. July 11, 2017) (quoting *Riley v. I.N.S.*, 310 F.3d 1253, 1257 (10th Cir. 2002)),

*R.&R. adopted*, 2017 WL 3268176 (D. Minn. July 31, 2017).

None of those mootness exceptions apply here, nor does Johnson argue to the

contrary.  Johnson has not identified any cognizable collateral consequences arising from

his allegation that the BOP was not calculating his FSA time credits.  Neither has

Johnson provided anything to the Court suggesting there are programs he engaged in or

completed in 2019 through 2022 for which he is entitled to time credits that are not

included in the BOP's calculation.  (*See generally*, Dkts. 1, 12.)  Accordingly, the first

exception to the mootness doctrine is inapplicable.

As to "a wrong capable of repetition yet evading review," that "exception applies

if the matter is too short in duration to be fully litigated before it ends or expires and there

is a reasonable expectation that [Petitioner] will be subjected to the same action

again."  *In re Search Warrants*, 487 F.3d at 1193.  The record shows Johnson's FSA time

credits have now been calculated and there is nothing to suggest that the BOP would stop

calculating any additional time credits that Johnson earns.  (*See* Dkt. 10 (Winger Decl.)

¶ 11 (stating "Johnson has earned approximately 630 days [of FSA time credits] as of

June 25, 2022.").)  Accordingly, it appears there is nothing further to litigate.  *Ahmed*,

2017 WL 3267738, at *3 ("Because there is nothing further to litigate in Petitioner's case,

[this] situation does not apply.").  In any event, Johnson would have the ability to bring a

new habeas petition under a new set of facts and circumstances should he believe a re-

calculation of his FSA time credits is required.  Therefore, the second exception to the mootness doctrine does not apply here.

With respect to the third exception, there is nothing on the record to suggest that Respondent "voluntarily cease[d] an allegedly illegal practice" that it will resume "at any time."  Thus, based on the record before the Court, the voluntary-cessation exception to the mootness doctrine does not apply here.

Finally, the Petition was brought on behalf of an individual Petitioner, not on behalf of a class of individuals, so the fourth exception also does not apply here.  (*See* Dkt. 1.)  Accordingly, the Court recommends dismissal of Grounds One through Four as moot to the extent they allege that the BOP is not calculating, or is improperly calculating, Johnson's FSA time credits or that credits he earned in 2019 through 2022 were not included in the BOP's calculations.

### 3.    Immediate Application of Johnson's FSA Earned Time Credits

The Court next considers Johnson's argument that his FSA time credits should be "immediately" applied to his sentence.  (Dkt. 1 at 8; Dkt. 12 at 3.)

Warden Eischen contends that Johnson's claim is not ripe because his accrued time credits do not equal the remainder of his sentence given his October 14, 2026 projected release date via GCT.  (Dkt. 8 at 18.)  Respondent asserts that Johnson's PATTERN score could increase, he could be subjected to disciplinary action, thereby losing time credits, and while Johnson is currently on home confinement, he could possibly be returned to institutional custody.  (*Id.* at 18-19.)  Respondent also contends that an inmate's time credits are not part of the time served component of an inmate's

sentence and states considering them as part of time served by applying them "is too speculative at this point to consider them as part of the percent of time served because Johnson's ability to claim FTCs depends on his PATTERN score at a later date." (*Id.* at 19)

"A court lacks subject matter jurisdiction over an action if the action is not ripe for resolution." *ASEA/AFSCME Local 52 Health Benefits Trust v. St. Jude Medical, LLC*, 362 F. Supp. 3d 642, 647 (D. Minn. 2019) (citing *Dakota, Minn. & E. R.R. Corp. v. S.D.*, 362 F.3d 512, 520 (8th Cir. 2004). "The doctrine of ripeness is basically a matter of timing, which requires (1) a sufficiently concrete case or controversy within the meaning of Article III of the Constitution, and also (2) prudential considerations must justify the present exercise of judicial power." *Gopher Oil Co. v. Bunker*, 84 F.3d 1047, 1050 (8th Cir. 1996) (internal quotation marks and citation omitted). "Merely potential impairment of constitutional rights under a statute does not of itself create a justiciable controversy in which the nature and extent of those rights may be litigated." *Alexander v. Thornburgh*, 713 F. Supp. 1278, 1286 (D. Minn. 1989) (quoting *Communist Party v. Subversive Activities Control Bd.,* 367 U.S. 1, 71 (1961)). "To be ripe for decision, the harm asserted must have matured sufficiently to warrant judicial intervention." *National Bank v. First Premier Capital LLC*, Civ. No. 10-903 ADM/JJK, 2010 WL 11646824, at *2 (D. Minn. July 22, 2010) (citation omitted).

The FSA is clear that a prisoner is only eligible to apply FSA time credits when the prisoner "has earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of

imprisonment."  18 U.S.C. § 3624(g)(1)(A); *see also Lallave v. Martinez*, 22-CV-791

(NGG) (RLM), 2022 WL 2338896, *11 (E.D.N.Y. June 29, 2022) ("[T]he BOP is

permitted to apply time credits only once an inmate 'has earned time credits that equal

the remainder of [her] sentence.'. . .  This is because time credits may be lost.  Thus,

since Petitioner's FSA credits do not equal the remainder of her sentence, it would be

inappropriate for the court to direct the BOP to adjudicate the credits at this time.")

(citations omitted).

The BOP's calculation shows Johnson has earned 630 days of FSA time credits as

of June 25, 2022.  (*See* Dkt 10 (Winger Decl.) ¶ 11.)  As discussed above, Johnson does

not dispute the amount of FSA earned time credits currently assessed to him.  Johnson's

projected release date is not until October 14, 2026, leaving him with approximately over

1,320 days on his sentence as of the date of this Report and Recommendation.

Accordingly, Johnson is not eligible for an application of his earned FSA time credits at

this time.  *See Mills v. Starr*, Civ. No. 21-1335 (SRN/BRT), 2022 WL 4084178, at *4 (D.

Minn. Aug. 17, 2022) (finding the petitioner's claim for immediate application of her

FSA time credits lacked merit and stating "Mills has 555 days of earned time credits.

Mills also has a projected release date of November 12, 2028, via a good conduct time

release.  This means that, as of this Report and Recommendation, Mills has over six years

remaining on her sentence.  Thus, even if she had earned twice as many earned time

credits as the 555 days the BOP calculates, she still would not have enough time credits

that is equal to the remainder of her imposed term of imprisonment.  As such, Mills is

ineligible to have her time credits applied.") (footnote omitted), *R. & R. adopted*, 2022

WL 4080750, at *1 (D. Minn. Sept. 6, 2022); *see also Milchin v. Warden*, Case No. 3:22-cv-195 (KAD), 2022 WL 1658836, at *3 (D. Conn. May 25, 2022) ("Milchin contends that all time credits can be applied to his sentence and will move up his release date. He argues that, under this construction, he will have served 50% of his sentence and, therefore, be eligible for consideration for transfer to home confinement. Time credits, however, may be lost. For this reason, the statute provides that a prisoner is eligible to have earned time credits applied for earlier release to prerelease custody only when he has earned time credits that equal the remainder of his sentence. At that time, the credit can immediately be applied and would no longer be subject to loss for future prohibited acts. Until Milchin accumulates sufficient time credits to equal the remainder of his sentence, he is not eligible to have those credits applied. Accordingly, this claim is without merit.") (footnote omitted) (citing 28 C.F.R. § 523.43; 28 C.F.R. § 541.3; 18 U.S.C. § 3624(g)(1)(A)); *Adkins v. Engleman*, Case No. CV 22-1988 JLS (MRW), 2022 WL 14966123, at *2 (C.D. Cal. Sept. 8, 2022) ("Federal courts around the country read Section 3624(g)(1)(A) to mean that 'the BOP is permitted to apply time credits only once an inmate' has earned enough 'that equal the remainder of her sentence.'") (collecting cases), *R. &R. adopted*, 2022 WL 15116425, at *1 (C.D. Cal. Oct. 24, 2022). This authority also undermines Johnson's argument that his "percentage of sentence complete[d]" should change based on an "application of all credits earned to date." (*See* Dkt. 1 at 8.)

As such, the Court recommends that Grounds One through Four of the Petition be denied for a lack of ripeness.

C.    **Evidentiary Hearing**

Because the Court can resolve Johnson's Petition by relying on the record, an evidentiary hearing is not necessary. *Wallace v. Lockhart*, 701 F.2d 719, 729-30 (8th Cir. 1983) ("[D]ismissal of the habeas petition without a hearing is proper where . . . the dispute can be resolved on the basis of the record.") (citations omitted).

## III.    RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1.    Ronald David Johnson's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Dkt. 1) be **DENIED**;

2.    This action be **DISMISSED WITH PREJUDICE** to the extent Johnson alleges that the BOP is not calculating, or is improperly calculating, his FSA time credits or that credits he earned in 2019 through 2022 were not included in the BOP's calculations; and

3.    This action be **DISMISSED WITHOUT PREJUDICE** to the extent Johnson seeks an immediate application of his FSA time credits to his sentence.

Dated: February 22, 2023                    *s/Elizabeth Cowan Wright*
                                            ELIZABETH COWAN WRIGHT
                                            United States Magistrate Judge

## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c)